UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

MOHAMMED SALEH SAAD,

Plaintiff,

-against-

DANAOS SHIPPING CO. LTD a/k/a DANAOS SHIPPING COMPANY LIMITED and CELLCONTAINER (NO.8) CORP.,

Defendants.

---------------------------------------------------------- x

**MEMORANDUM & ORDER**
**24-cv-04376 (DLI) (LKE)**

**DORA L. IRIZARRY, United States District Judge:**

On June 20, 2024, Mohammed Saleh Saad ("Plaintiff") commenced this action against Cellcontainer (No.8) Corp. and Danaos Shipping Co. Ltd. a/k/a Danaos Shipping Company Limited (collectively, "Defendants"), asserting claims for negligence pursuant to the Jones Act, maintenance and cure, and intentional infliction of emotional distress ("IIED"). *See*, Compl., Dkt. Entry No. 1. Plaintiff alleged that venue is proper in the Eastern District of New York ("EDNY"), claiming that "[a] substantial part of the events or omissions giving rise to the claim [sic] occurred in th[e] [EDNY]." *Id.* ¶ 3. Plaintiff also invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Id.* ¶¶ 5, 15-16 (alleging, *inter alia*, that the parties are foreign citizens). Plaintiff subsequently amended the complaint, but asserted the same venue and jurisdictional grounds and causes of action. *See*, Am. Compl., Dkt. Entry No. 15. Plaintiff later claimed federal question jurisdiction. *See*, Opp'n Br. at 1, Dkt. Entry No. 26.

The Court finds that it has federal question jurisdiction over the Jones Act claim pursuant to 28 U.S.C. § 1331. *See*, *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1022 (2d Cir. 1984) (citation omitted). However, diversity jurisdiction is lacking because "the presence of aliens on two sides of a case destroys diversity jurisdiction." *Suedrohrbau Saudi Co. v. Bazzi*, 2023 WL

1807717, at *2 (2d Cir. Feb. 8, 2023) (citation and internal quotation marks omitted); *See also*, *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) (foreign national with permanent U.S. residence is an "alien" for diversity purposes). While Plaintiff initially failed to allege jurisdiction properly, dismissal is not warranted because federal question jurisdiction was obvious from the face of the complaint. *See*, *Maitland v. Fishbein*, 712 F. App'x 90, 92 (2d Cir. 2018).

Defendants moved to dismiss the amended complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (the "Rules") and the doctrine of *forum non conveniens*. *See*, Mot. Dismiss Am. Compl., Dkt. Entry Nos. 17 to 20 (arguing, in part, that the forum selection clause in Plaintiff's employment agreement requires disputes to be brought exclusively in Greece). Plaintiff opposed the motion contending that Defendants' reliance on Rule 12(b)(3) for dismissal based on a forum selection clause is misplaced, and venue properly lies in the EDNY. *See*, Opp'n Mot. Dismiss Am. Compl., Dkt. Entry Nos. 26 to 29. Defendants replied, *inter alia*, that venue in the EDNY is lacking. *See*, Reply, Dkt. Entry Nos. 31 to 36.

As a threshold matter, the Court first must address the issue of venue. *See*, *Spano v. Suri*, 2025 WL 1380035, at *2 (S.D.N.Y. May 13, 2025) (addressing venue issues before considering a motion to dismiss pursuant to Rule 12(b)(6)); *Abalu v. Soc'y of Hum. Res. Mgmt.*, 2025 WL 1019199, at *16 (S.D.N.Y. Apr. 4, 2025) (deciding Rule 12(b)(3) motion and deferring the merits of the Rule 12(b)(6) motion to the transferee court). Here, while Plaintiff correctly asserts that Rule 12(b)(3) is not the proper mechanism to enforce a forum selection clause, Defendants preserved their Rule 12(b)(3) improper venue arguments, particularly in light of the parties' respective arguments in the opposition and reply papers. *See*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52, 55, 59-60 (2013) (explaining that Rule 12(b)(3) provides for "dismissal only when venue is 'wrong' or 'improper'" pursuant to 28 U.S.C. §§ 1391(b) and

1406(a), and that the doctrine of *forum non conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum"). For the reasons set forth below, the Court concludes that venue in this District is not proper and the case properly should be transferred to the United States District Court for the District of New Jersey.

## BACKGROUND[1]

On or about January 21, 2023, Defendants employed Plaintiff to work as a seaman aboard their foreign-flagged vessel named *MV Express Athens* (the "Vessel"). Am. Compl. ¶¶ 11, 14-16. Plaintiff later boarded the Vessel in Tanzania en route to the United States. *Id.* ¶ 17. On or about March 5, 2023, while the Vessel was "off the coast of New Jersey," Plaintiff became ill "after being exposed to a buildup of fumes of toxic gases" in a cargo hold he was cleaning. *Id.* ¶¶ 18-19. Plaintiff claims that such buildup was caused by Defendants' negligence in failing to ventilate the cargo hold adequately. *Id.* ¶¶ 19-21, 23, 35.

Plaintiff and others promptly notified the Vessel's officers of his condition and requested treatment on the Vessel or that he be taken to the State of New Jersey for medical treatment. *Id.* ¶¶ 24, 37. Those requests went unanswered. *Id.* ¶ 25. Instead, the captain decided to drop Plaintiff off in Egypt "a week or two later." *Id.* ¶ 27; Pl.'s Jan. 9, 2025 Decl. ("Pl.'s Decl.") ¶ 20, Dkt. Entry No. 28 (stating that the captain intended to depart to Egypt "after the ship finished unloading in New Jersey"). Plaintiff was confined to his quarters without medical care "for several days," during which his medical condition deteriorated. Am. Compl. ¶¶ 28-29, 38.

[1] The following facts are taken from the amended complaint and other relevant materials. *See*, *Liu v. Mayorkas*, 2025 WL 1707617, at *2 (E.D.N.Y. June 18, 2025) (stating that, on a Rule 12(b)(3) motion to dismiss, courts may "rely on facts and consider documents outside the complaint" (citation and internal quotation marks omitted)). For purposes of deciding this Rule 12(b)(3) motion, the Court accepts facts alleged in the amended complaint as true and views all other facts in the light most favorable to Plaintiff. *Id.* (citations omitted). A hearing is not required here because "there are [no] disputed facts relevant to the venue determination." *Id.* (citation and internal quotation marks omitted).

On March 16, 2023, the Vessel docked at "the Port of New Jersey," and Plaintiff was transported to a hospital in Bayonne, New Jersey, where he was diagnosed with having suffered a stroke while aboard the Vessel on or about March 5, 2023. *Id.* ¶¶ 29-31; *See also*, Mar. 2, 2023 Email to U.S. Customs and Border Protection, Mosimann Decl. Ex. 2, Dkt. Entry No. 34-2 (requesting humanitarian parole for Plaintiff and stating that the Vessel would disembark at "Maher Terminal"[2]). Plaintiff was hospitalized in the Bayonne hospital until April 5, 2023. Am. Compl. ¶ 45; Pl.'s Decl. ¶ 24. Plaintiff claims that, since on or about March 5, 2023, Defendants have prevented him from resuming his position as a seaman. Am. Compl. ¶¶ 32, 40-41. These allegations together form the basis of Plaintiff's Jones Act claim and his cause of action for maintenance and cure pursuant to general maritime law. *Id.* ¶¶ 14-43.

As to his IIED claim, Plaintiff asserts that Defendants disregarded his "health, rights and safety" and caused him harm. *Id.* ¶¶ 56-57. Additionally, Plaintiff alleges that two of Defendants' agents unlawfully confined him while he was hospitalized in the Bayonne hospital for the purpose of repatriating him to Tanzania upon discharge. *Id.* ¶¶ 44, 46-47. These individuals allegedly prevented Plaintiff from communicating with hospital staff and others and "cajoled" the staff to discharge him. *Id.* ¶¶ 48-50. Upon his discharge, Defendants' agents transported Plaintiff, over his objections, to John F. Kennedy International Airport ("JFK") where he was set to fly out to "a destination in Africa." *Id.* ¶¶ 51-52.

At JFK, Plaintiff experienced a medical emergency. *Id.* ¶ 53. He then was transported by ambulance to, and hospitalized at, a hospital in Queens, New York. *Id.* ¶¶ 53-54. At that hospital, Defendants' agents again attempted to prevent him from communicating with friends and hospital

[2] Maher Terminal is located in Elizabeth, New Jersey, and is one of several marine terminals within the Port of New York and New Jersey. *See*, *Container Terminals*, Port Auth. of N.Y. & N.J., https://www.panynj.gov/port/en/our-port/container-terminals.html [https://perma.cc/7HPJ-L53R] (last visited Apr. 1, 2026).

staff. *Id.* ¶ 54. A few hours later, hospital staff told Plaintiff that he would be discharged. Pl.'s Decl. ¶ 36. While the agents were on "a break," Plaintiff "escape[d] . . . [their] confinement" and left the hospital on his own accord. Am. Compl. ¶ 55. Since 2023, Plaintiff has resided in Brooklyn and treated medically at a Brooklyn hospital. *Id.* ¶ 5; Pl.'s Decl. ¶¶ 38-40, 43-44.[3]

## LEGAL STANDARD

On a Rule 12(b)(3) motion, "the plaintiff bears the burden of establishing that venue is proper." *Doe 1 v. Congreg. of the Sacred Hearts of Jesus & Mary*, 2024 WL 4276174, at *2 (E.D.N.Y. Sept. 24, 2024) (citation and internal quotation marks omitted). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (citation omitted). "Such a showing requires 'legally sufficient allegations, including an averment of facts that, if credited, would suffice to establish that . . . venue is proper.'" *Am. Integrated Sec. Grp., Inc. v. Terra Sound Tech. LLC*, 2023 WL 6308014, at *8 (E.D.N.Y. Sept. 28, 2023) (citations omitted). In making such determination, courts must "view all facts in the light most favorable to the plaintiff, . . . accept[] the facts alleged in the complaint[,] and constru[e] all reasonable inferences in the plaintiff's favor." *Liu*, 2025 WL 1707617, at *2 (citations and internal quotation marks omitted).

## DISCUSSION

Plaintiff failed to make a *prima facie* showing that venue of the entire action is proper in the EDNY. Venue is proper in a judicial district in which: (1) "any defendant resides, if all defendants are residents of the State in which the district is located" (known as "residential venue"); or (2) "a substantial part of the events or omissions giving rise to the claim occurred, or

[3] Recent filings suggest that Plaintiff moved out of the United States and returned to Tanzania on March 10, 2026. *See*, Pl.'s Jan. 23, 2026 Decl., Dkt. Entry No. 51-2 (declaring that, due to his medical condition, he "plan[ned] on leaving the United States as soon as possible and returning to Tanzania" to spend his "final months" with his family); Feb. 5, 2026 Booking, Dkt. Entry No. 51-3 (one-way ticket from JFK to Tanzania, departing on March 10, 2026).

a substantial part of property that is the subject of the action is situated" (known as "transactional venue"). 28 U.S.C. § 1391(b)(1)-(2). If there otherwise is no such eligible district, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" (known as "fallback venue"). *Id.* § 1391(b)(3). Venue may be appropriate in multiple districts. *See*, 28 U.S.C. § 1391(b); *See also*, *Gulf Ins. Co.*, 417 F.3d at 356 ("[T]he civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts."). If venue is not proper in the district where suit is filed, a court then "*shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added).

## I. <u>Transactional Venue</u>

In his pleadings, Plaintiff exclusively relied on transactional venue, alleging that "[a] substantial part of the events or omissions giving rise to the claim [sic] occurred in th[e] [EDNY]." Compl. ¶ 3 & Am. Compl. ¶ 3 (citing 28 U.S.C. §§ 1391(b)(2), (3)).[4] To assess transactional venue, courts first "identify the nature of the claims and the acts or omissions that . . . [allegedly] give rise to those claims." *Daniel*, 428 F.3d at 432 (citing *Gulf Ins. Co.*, 417 F.3d at 357). Thereafter, courts determine whether "significant events or omissions material to the . . . claim[s] . . . occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357. This "substantiality" requirement "is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432-33 (citations omitted) (requiring "a close nexus" between

[4] Plaintiff's reference to Section 1391(b)(3), the fallback venue provision, is baffling because it bears no relationship to transactional venue. Fallback venue is available "only if [it] cannot be established in another district pursuant to any other venue provision." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 434 (2d Cir. 2005). As set forth below, fallback venue is unavailable as venue properly lies in a federal district pursuant to Section 1391(b)(2).

the claims and the "material acts or omissions within the forum"). Importantly, "venue must be proper as to each defendant and each claim." *Doe 1*, 2024 WL 4276174, at *2 (citation omitted).

**A. Jones Act Claim**

The Court begins its venue analysis with the Jones Act claim as it confers federal question jurisdiction. This claim establishes a cause of action to recover damages from an employer for personal injuries or death suffered by a seaman in the course of employment. *See*, 46 U.S.C. § 30104(a). As the parties correctly concede, Section 1391, the general venue statute, applies. *See*, *Havener v. Gabby G Fisheries Inc.*, 2021 WL 602681, at *2 (E.D.N.Y. Feb. 12, 2021). Thus, in assessing transactional venue as to Plaintiff's Jones Act claim, the Court finds that his allegation that he was injured on the Vessel as a result of Defendants' negligence is central and material to the claim. *See*, *Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 58 (2d Cir. 1986) (stating that, to establish a Jones Act claim, a plaintiff must show, *inter alia*, "that a dangerous condition actually existed on the ship").

Simply put, Plaintiff was not injured in the EDNY, and no events or omissions significant or material to the Jones Act claim occurred in the EDNY. *See*, Am. Compl. ¶¶ 18-35. As Plaintiff himself admits, at the time of his exposure and ensuing sickness on or about March 5, 2023, he "was onboard the [Vessel] en route to the Port of New Jersey." *Id.* ¶ 18; *See also*, Am. Compl. ¶ 2 ("The incident complained of herein occurred in navigable waters off the coast of New Jersey."); Port Calls Report, Lacertosa Decl. Ex. 4, Dkt. Entry No. 27-4 at 12 (showing that the Vessel departed the Port of Dumyat (Damietta) in Egypt on March 1, 2023, and entered the Port of New York and New Jersey on March 16, 2023). Thus, as alleged, the material events or omissions took place within the District of New Jersey ("DNJ"). *See*, *Havener*, 2021 WL 602681, at *3 (holding that "a substantial part of the events giving rise to [the Jones Act] claims occurred in

Massachusetts" based on the allegation that the plaintiff "was injured while working" on a vessel in "navigable waters of the Atlantic Ocean in or about New Bedford, Massachusetts" (citation and internal quotation marks omitted)). Accordingly, as Plaintiff has failed to make a *prima facie* showing that venue in the EDNY is proper for his Jones Act claim, such claim must be dismissed or, if appropriate, transferred to the DNJ pursuant to 28 U.S.C. § 1406(a).

**B. Maintenance and Cure Claim**

Plaintiff similarly failed to make a *prima facie* showing that venue in the EDNY is proper as to his claim for maintenance and cure, which "concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship" and "until he reaches maximum medical recovery," including where "the incapacity is declared to be permanent." *Messier v. Bouchard Transp.*, 688 F.3d 78, 81 (2d Cir. 2012) (citations and internal quotation marks omitted). The right to maintenance and cure "'arises from the contract of employment' and 'does not rest upon negligence or culpability on the part of the owner or master.'" *Id.* at 82 (citation omitted). Again, the material events or omissions underlying this claim concern Plaintiff's injury and ensuing sickness, which occurred or were aggravated while he was on the Vessel in navigable waters off the coast of New Jersey. *Id.* at 89 (holding that maintenance and cure is available "for any injury or illness that occurs or becomes aggravated while [a seaman] is serving the ship"). As no event or omission material to the maintenance and cure claim occurred in the EDNY, the Court concludes that Plaintiff failed to make a *prima facie* showing that venue in the EDNY is proper for such claim. Accordingly, this claim also must be dismissed or, if appropriate, transferred to the DNJ pursuant to 28 U.S.C. § 1406(a).

## C. **IIED Claim**

Plaintiff's allegations in support of his IIED claim consist of separate instances of alleged misconduct taking place: (1) on the Vessel while in navigable waters off the coast of New Jersey; (2) while Plaintiff was hospitalized for approximately twenty days in New Jersey; (3) during his transport from the New Jersey hospital to JFK for purposes of repatriating Plaintiff to Africa; and (4) at JFK and a Queens hospital, where Plaintiff allegedly was restrained by Defendants' agents. In addition to his inartful pleading, Plaintiff failed to assert whether New York or New Jersey law applies to the IIED claim. Nonetheless, under either law, Plaintiff generally must show that Defendants engaged in outrageous conduct causing severe emotional distress. *See*, *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56 (2016); *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). Notwithstanding these deficiencies, the Court still must conduct the transactional venue analysis based on Plaintiff's claims as alleged.

As an initial matter, Plaintiff's assertions that "JFK Airport and Jamaica Hospital are both in Queens" and that he currently resides and receives medical care in Brooklyn are not helpful to his case. Opp'n Br. at 5. First, "it is well-established that the location of the effects of a tort have no bearing on venue." *Holloway v. Holy See*, 537 F. Supp.3d 502, 506 (S.D.N.Y. 2021) (collecting cases); *See also*, *Pisani v. Diener*, 2009 WL 749893, at *7 (E.D.N.Y. Mar. 17, 2009) (concluding that the plaintiff's "continued alleged suffering in Nassau County does not create venue in th[e] [EDNY] where all of the events relevant to the claims took place in Florida"). Second, the location of Plaintiff's current residence "is irrelevant to the venue inquiry." *Kim v. Saccento*, 2022 WL 9583756, at *1 (2d Cir. Oct. 17, 2022) (citing 28 U.S.C. § 1391(b)). Thus, Plaintiff is left with his allegations that Defendants' agents disregarded his health, unlawfully confined him, prevented him from communicating with others, and forcibly transported him across state lines.

Unquestionably, the vast majority of the relevant contacts occurred in the DNJ and outside the EDNY, *i.e.*, those occurring on the Vessel, at the Bayonne hospital, and during his transportation within the DNJ. However, as explained above, significant events material to a claim need not occur in a single district for transactional venue purposes, as the analysis "is more a qualitative than a quantitative inquiry." *Daniel*, 428 F.3d at 432-33 (stating that courts should not "simply add[] up the number of contacts"). To properly assert "the substantiality necessary to support venue," Plaintiff must allege the existence of "a close nexus" between the IIED claim and the "material acts or omissions within the [EDNY]." *Id.* at 433 (citation omitted). Here, and without addressing the sufficiency of the claim under either New York or New Jersey law, the Court finds that there is a close nexus between a portion of the IIED claim and the events occurring in the EDNY, making such claim properly venued in the EDNY pursuant to Section 1391(b)(2).

**D. <u>Pendent Venue</u>**

As venue of the entire action must be proper in the EDNY, Plaintiff has failed to make such showing. *Doe 1*, 2024 WL 4276174, at *2. However, courts sometimes apply the doctrine of "pendent venue," which is "'derived from the concept of pendent jurisdiction' to alleviate the potential problems of inefficiency and piecemeal litigation that the venue rules could otherwise generate." *Basile v. Walt Disney Co.*, 717 F. Supp.2d 381, 387 (S.D.N.Y. 2010) (citation omitted). Indeed, "[m]any cases have held that if a federally justiciable claim satisfied the venue statutes, then venue necessarily is proper over any state claim appended to it under the supplemental jurisdiction statute." *Id.* (quoting 14D WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3808 (2d ed. 2002)). Crucially, even if available, application of the doctrine is discretionary. *Id.*

Here, the pendent venue doctrine is unavailable because it "is ordinarily employed where venue is lacking for a state law claim that arises from the same nucleus of operative facts as a

'properly venued' federal claim." *Garrel v. NYLCare Health Plans, Inc.*, 1999 WL 459925, at *4 (S.D.N.Y. June 29, 1999) (citations omitted). In such case, "venue for the state law claim is clearly a function of venue for the federal claim and, in the court's discretion, pendent venue may be found over the state law claim to enable adjudication of that claim together with the federal claim." *Id.* Courts also invoke the doctrine to exercise venue "over an *additional* [improperly venued] federal claim which is subject to its *own specific venue provisions*." *Id.* at *5 (emphases added). Neither case is present here. There is no "properly venued" federal claim upon which the doctrine may be invoked. Instead, transactional venue only is proper as to the IIED claim, which is a claim based on state law and upon which the Court lacks an independent basis for subject matter jurisdiction.

As courts applying the doctrine recognize, "[i]t would make no sense to permit federal courts to extend subject matter jurisdiction to supplemental claims, which implicates Article III of the Constitution, and then to thwart the assertion of those claims on the basis of venue, which is a wholly non-constitutional doctrine." 14D WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3808 (4d ed. 2026) (collecting cases). In turn, it would make no sense to exercise pendent venue over improperly venued federal claims based on a state law claim that, while properly venued, confers no independent basis for jurisdiction. Indeed, if the Court were to dismiss the Jones Act and maintenance and cure claims pursuant to 28 U.S.C. § 1406(a), it could (and would) decline to exercise supplemental jurisdiction over the IIED claim pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court declines to exercise pendent venue over the secondary IIED claim as it lacks an independent jurisdictional hook. *See*, *Basile*, 717 F. Supp.2d at 388 (finding pendent venue inappropriate where a "secondary" claim is the only properly venued claim).

## II. <u>Residential Venue</u>

Finally, for the first time in opposition to Defendants' motion to dismiss, Plaintiff argued venue also is proper pursuant to Section 1391(c)(3). *Compare* Compl. & Am. Compl, *with* Opp'n Br. at 5 (asserting that "Defendants may be sued in any judicial district" because neither is "a resident of the United States"). As an initial matter, Plaintiff's argument fails because it is "an incorrect and incomplete statement of the law": Section 1391(c) "defines residency for venue purposes—it does not establish where venue is proper." *Assa Realty LLC v. Sol. Grp. Corp.*, 2017 WL 2241524, at *3 (S.D.N.Y. May 22, 2017). Instead, as previously stated, Section 1391(b) sets forth the rules governing where venue is proper. To the extent Plaintiff relies on the residential venue provision, he must make a *prima facie* showing that at least one of the two Defendants resides in the EDNY and the other Defendant also resides in New York State. *See*, 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

To answer that question, the Court first must determine Defendants' residence. Plaintiff asserts that Defendants "may be sued in any [federal] judicial district" because they are not United States residents. Opp'n Br. at 5 (citing 28 U.S.C. § 1391(c)(3)). Again, Plaintiff relies on the incorrect legal provision. Section 1391(c)(3) applies only if Section 1391(c)(1) (for individuals) and Section 1391(c)(2) (for entities) do not apply. *See*, *Sharp Corp. v. Hisense Elec., Co.*, 2017 WL 9325873, at *3 (S.D.N.Y. Dec. 22, 2017). Thus, the starting point is Section 1391(c)(2), which defines the residence of "entit[ies] with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated" and regardless of their country of formation. 28 U.S.C. § 1391(c)(2); *See also*, *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp.3d 244, 274 n.11 (E.D.N.Y. 2014) (applying Section 1391(c)(2) to foreign corporations);

*Sharp Corp.*, 2017 WL 9325873, at *3 (same). Therefore, for venue purposes, Defendants reside in "any judicial district in which [they are] subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). If no such district exists, "then venue is proper in any district, under what remains of the ancient rule that an alien may be sued in any district." *Sharp Corp.*, 2017 WL 9325873, at *3 (citing 28 U.S.C. § 1391(c)(3)).

Here, Plaintiff failed to make the required *prima facie* showing. Indeed, Plaintiff has made no attempt to argue that the EDNY is a "judicial district in which . . . [Defendants are] subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Instead, Plaintiff relies on its assertion that "Defendants accepted service in this district," implying that venue is proper pursuant to Section 1391(b)(1) because Defendants waived any personal jurisdiction objection. Opp'n Br. at 5. However, any such purported waiver is irrelevant to the venue analysis because, "for purposes of determining corporate residenc[e] under section 1391," courts assess "personal jurisdiction over Defendants at the time Plaintiff commenced this action irrespective of any purported subsequent waiver." *Powell v. Monarch Recovery Mgmt., Inc.*, 2016 WL 8711210, at *3 (E.D.N.Y. Jan. 22, 2016).

To make a *prima facie* showing of personal jurisdiction for purposes of venue, Plaintiff must aver "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Id.* at *5 (citation and internal quotation marks omitted). Here, the amended complaint merely alleges that Defendants are foreign entities that "transact[] substantial business in the United States." Am. Compl. ¶¶ 4, 7-9. Such a conclusory allegation is insufficient to allege plausibly general or specific personal jurisdiction over Defendants. *See*, *Powell*, 2016 WL 8711210, at *5, 7 (holding that a similar allegation provides no facts "as to the nature of Defendants' purported business within New York" or

"contacts with New York State, or that they are so continuous and systematic' as to render [them] essentially at home in the forum State"). Simply put, Plaintiff failed to allege any facts supporting the existence of personal jurisdiction and that its exercise "comports with due process." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citations omitted). Accordingly, the Court cannot find that the EDNY is a proper venue for this action based on Section 1391(b)(2), the residential venue provision. *See*, *One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) (affirming district court's dismissal for improper venue after finding that the plaintiff "failed to allege that 'all defendants' are residents of New York" pursuant to Sections 1391(b)(1) and (c)(2) (citation omitted)).

**III. <u>Transfer</u>**

As Plaintiff failed to make the required *prima facie* showing that venue of the entire action is proper in the EDNY, the Court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435 (citation omitted). The purpose "is to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) (citation omitted). "In keeping with this purpose, '[i]n most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation,'" especially when the improper filing "was in good faith and transfer would be 'efficient and economical.'" *Abalu*, 2025 WL 1019199, at *15 (citations omitted).

Here, pursuant to Section 1406(a), the interest of justice strongly favors transfer of the Jones Act and maintenance and cure claims to the DNJ, where those claims could have been brought. Plaintiff generally has pursued his claims in a diligent fashion. *See*, *Ne. Landscape &*

*Masonry Assocs., Inc. v. State of Connecticut Dep't of Lab.*, 2015 WL 8492755, at *5 (S.D.N.Y. Dec. 10, 2015) (considering three factors in deciding whether to transfer pursuant to Section 1406). Defendants would suffer no prejudice in light of their contacts with that District. *Id.* Importantly, there is no indication that Plaintiff filed suit in the EDNY in bad faith. *Id.*

Discretionary transfer of the entire action, including the IIED claim, also is warranted "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)[,] and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citations omitted). In making that determination, courts consider the following non-exhaustive factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Id.* at 106-07 (citation omitted). "Some courts have identified additional factors, including (1) 'the forum's familiarity with governing law,' and (2) 'trial efficiency and the interest of justice, based on the totality of the circumstances.'" *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp.3d 346, 356 (E.D.N.Y. 2016) (citations omitted). "There is no strict formula for the application of these factors, and no single factor is determinative." *Id.* (citations omitted) (noting that they should be weighed in the individualized context of each case).

A balanced review of those factors supports discretionary transfer. First and foremost, upon consideration of the totality of the circumstances, the locus of operative facts, judicial economy and interest of justice factors weigh most heavily in favor of transfer and strongly outweigh Plaintiff's choice of forum. As stated earlier, this District has only a tangential

connection to this action. The "center of gravity" of this litigation is New Jersey, where the vast majority of the operative facts took place. *See*, *Weinfeld v. Minor*, 2014 WL 4954630, at *6 (E.D.N.Y. Sept. 30, 2014) (stating that "[t]he core determination under Section 1404(a) is the center of gravity of the litigation" (citation and internal quotation marks omitted)); *See also*, *Sarracco*, 220 F. Supp.3d at 357 ("[C]ourts have noted that the weight given to . . . [Plaintiff's choice of forum] is significantly diminished where none of the operative facts occurred in th[at] forum."). Indeed, Section 1406(a) mandates transfer or dismissal of the Jones Act and maintenance and cure claims. Therefore, to hear the related IIED claim in this District, the Court would have to sever the action, dismiss or transfer the primary claims to the DNJ, and exercise supplemental jurisdiction over the secondary IIED claim pursuant to Section 1367(c)(3). Because the claims share a common nucleus of operative fact, the transfer of the entire action would serve the interests of justice and efficiency and avoid the potential for inconsistent judgments.

Moreover, the transferee court will be familiar with the governing law of this case, including the application of the Jones Act and maritime law principles. As to the convenience of witnesses and availability of process to compel their attendance, those factors would be neutral at worst. Generally, a subpoena is enforceable as to persons who "reside[], [are] employed, or regularly transact[] business in person" within 100 miles of the place of compliance. Fed. R. Civ. P. 45(c)(1)(A), (2)(A). While the parties have not identified potential witnesses, the allegations reveal that there is a substantial likelihood that many witnesses with material information reside within the subpoena power of the transferee court. As to any potential witnesses residing in New York, the distance between the EDNY and DNJ is insubstantial. New York and New Jersey are contiguous states, and the transferee court is accessible easily by public transportation and less than 20 miles from the transferor court.

Other than Plaintiff's choice of forum, the factors involving the parties' means and convenience slightly weigh against transfer. The record reflects that no party resides in New Jersey and that Plaintiff allegedly suffers from financial difficulties. However, there is no evidence that litigating in New Jersey, as compared to New York, would be prohibitively expensive. Plaintiff is represented by counsel, Weitz & Luxenberg P.C., which has a New Jersey office, and counsel of record for Plaintiff appears to be licensed in New Jersey. Moreover, any travel to New Jersey by Plaintiff or witnesses probably would be limited to attending any settlement conference and testifying in the event the case proceeds to trial. To the extent Plaintiff indeed moved to Tanzania, travel, including associated costs, to New York or New Jersey would be comparable. Therefore, while the relative means of Plaintiff in contrast to a multinational corporation favors Plaintiff, the Court does not view this factor as having significant weight because evidence of substantial hardship resulting from the transfer is lacking.

Finally, the factor involving the location of documents is not "particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production." *Sarracco*, 220 F. Supp.3d at 358 (citations omitted). Even so, the Court lacks information necessary to assess the relative of ease of access to sources of proof. Nonetheless, based on the current record, it appears that relevant documents are maintained in New York, New Jersey, and outside the United States. For these reasons, discretionary transfer of the entire action to the DNJ pursuant to Section 1404(a) is warranted.

**CONCLUSION**

For the reasons set forth above, Defendants' Rule 12(b)(3) motion for dismissal based on improper venue is granted in part and denied in part, and their *forum non conveniens* motion to dismiss is denied without prejudice to renewal before the transferee court.[5] The Clerk of the Court is directed to transfer this action to the United States District Court for the District of New Jersey. All other pending matters, including Plaintiff's purported preliminary injunction motion, are referred to the transferee court.

SO ORDERED.

Dated: Brooklyn, New York
October 6, 2026

/s/
DORA L. IRIZARRY
United States District Judge

[5] The record on the *forum non conveniens* motion to dismiss is unsatisfactory. It includes self-serving declarations from purported experts that present conflicting opinions of foreign law central to the motion. *See*, Dkt. Entry Nos. 20, 29 & 35. "Questions of foreign law are decided in the federal courts pursuant to [Rule] 44.1.'" *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 413 (2d Cir. 2020). "The district court's task . . . is to arrive at an independent interpretation of the governing [foreign] law, aided by the most persuasive (or, as the case may be, authoritative) materials available to it." *Id.* at 414 (cautioning district courts from issuing "a determination that rests 'simply on the basis of an inadequate submission by one party'" (citation omitted)). The parties should have submitted certified translations of the relevant sources of foreign law, together with their "experts'" declarations.